**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DAVID LOUIS WHITEHEAD,                                      :
                                                           :        No. 24 Civ. 2283 (MMG)
                                      Plaintiff,           :
                                                           :
                                                           :        ECF Case
-against-                                                  :
                                                           :
                                                           :
THE WALT DISNEY COMPANY, HULU, and                         :
NATIONAL GEOGRAPHIC CORPORATION,                           :
                                                           :
                                                           :
                                      Defendants.          :
                                                           :
                                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS AND MOTION
## FOR AN ANTI-FILING INJUNCTION AGAINST PLAINTIFF

Thomas B. Sullivan                    Lauren P. Russell (*pro hac vice* forthcoming)
BALLARD SPAHR LLP                     BALLARD SPAHR LLP
1675 Broadway, 19th Floor             1909 K Street, NW, 12th Floor
New York, NY 10019                    Washington, DC 20006-1157
Tel: (212) 850-6139                   Telephone: (202) 661-7605
Fax: (212) 223-1942                   Facsimile: (202) 661-2299
sullivant@ballardspahr.com            russelll@ballarspahr.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ............................................................................................2

    A.    Aretha Franklin ....................................................................................2

    B.    Plaintiff .................................................................................................3

    C.    Plaintiff's Creative Works and Pitch ...................................................4

    D.    Genius: Aretha and Plaintiff's Claims ................................................5

ARGUMENT .................................................................................................................6

I.    PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM IS DEFICIENT .....................7

    A.    Plaintiff Has Failed to Allege Actual Copying ...................................7

    B.    Plaintiff Has Failed to Allege Striking or Substantial Similarity ...........................9

II.    PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED, LARGELY
UNTIMELY AND NOT PLAUSIBLY PLED ..................................................................13

    A.    The Copyright Act Preempts Plaintiff's State Law Claims ...............13

    B.    The Statute of Limitations Has Expired for Most of Plaintiff's State
Law Claims ........................................................................................15

    C.    Plaintiff Has Not Plausibly Pled Any State Tort Claims ...................17

        1.    Negligence (Claim 2) ............................................................17

        2.    Invasion of Privacy (Claim 3) ...............................................18

        3.    Unfair Business Practices (Claim 4) ......................................18

        4.    Unjust Enrichment (Claim 6) .................................................19

        5.    Breach of Implied Contract (Claim 7) ...................................19

        6.    Fraud (Claim 8) ......................................................................20

        7.    Anti-Trust Violations (Claim 9) .............................................20

III.    PLAINTIFF'S LANHAM ACT CLAIM IS PREEMPTED AND
        OTHERWISE DOES NOT STATE A CLAIM................................................................20

        A.    Dastar Preemption Applies to this Claim...............................................................21

        B.    A Presumption of Laches Applies to Plaintiff's Lanham Act Claim....................21

        C.    Plaintiff Otherwise Does Not Plead a Lanham Act Claim ...................................22

IV.    THE COURT SHOULD ENTER AN ANTI-FILING INJUNCTION.............................22

CONCLUSION..........................................................................................................................25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*2138747 Ontario, Inc. v Samsung C&T Corp.*,
   144 A.D.3d 122 (1st Dep't 2016) ...........................................................17

*Abdin v. CBS Broadcasting, Inc.*,
   971 F.3d 57 (2d Cir. 2020) ...........................................................7, 10, 11

*Afanassieva v. Page Transportation, Inc.*,
   2022 WL 7205009 (2d Cir. Oct. 13, 2022) .....................................16, 17

*Allen v. Scholastic Inc.*,
   739 F. Supp. 2d 642 (S.D.N.Y. 2011) ..................................................10

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .......................................................6, 7, 12, 18

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) .....................................................................6

*Boyle v. Stephens, Inc.*,
   1998 WL 80175 (S.D.N.Y. Feb. 25, 1998) ............................................10

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*,
   373 F.3d 296 (2d Cir. 2004) ...............................................................14

*Buckler v. Craft Beekman, LLC*,
   2024 WL 3274509 (S.D.N.Y. July 2, 2024) ............................................7

*Camelot Si, LLC v. ThreeSixty Brands Group LLC*,
   632 F. Supp. 3d 471 (S.D.N.Y. 2022) ..................................................22

*Cantor Fitzgerald Inc. v. Lutnick*,
   313 F.3d 704 (2d Cir. 2002) ...............................................................16

*Castro v. Cusack*,
   2019 WL 3385218 (E.D.N.Y. July 26, 2019) ...........................................8

*CheckPoint Fluidic Systems International, Ltd. v. Guccione*,
   888 F. Supp. 2d 780 (E.D. La. 2012) ..................................................22

*Clanton v. UMG Recordings, Inc.*,
   556 F. Supp. 3d 322 (S.D.N.Y. 2021) ..................................................7, 8

*Conopco, Inc. v. Campbell Soup Co.*,
    95 F.3d 187 (2d Cir. 1996)................................................................21

*Curley v. AMR Corp.*,
    153 F.3d 5 (2d Cir. 1998)..................................................................17

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
    539 U.S. 23 (2003).............................................................................21

*Delaware Valley Fish Co. v. 3South LLC*,
    601 F. Supp. 3d 7 (M.D. La. 2022)..................................................18

*Effie Film, LLC v. Murphy*,
    564 F. App'x 631 (2d Cir. 2014) .....................................................11

*Effie Film, LLC v. Murphy*,
    932 F. Supp. 2d 538 (S.D.N.Y. 2013)..............................................11

*Effie Film, LLC v. Pomerance*,
    909 F. Supp. 2d 273 (S.D.N.Y. 2012)..........................................2, 11

*Eliahu v. Jewish Agency for Israel*,
    919 F.3d 709 (2d Cir. 2019)........................................................23, 24

*Freeplay Music, Inc. v. Cox Radio, Inc.*,
    409 F. Supp. 2d 259 (S.D.N.Y. 2005)..............................................21

*Gary Friedrich Enterprises, LLC v. Marvel Enterprises, Inc.*,
    713 F. Supp. 2d 215 (S.D.N.Y. 2010)..............................................14

*In re Gaston & Snow*,
    243 F.3d 599 (2d Cir. 2001)..............................................................16

*Global Finance Corp. v. Triarc Corp.*,
    93 N.Y.2d 525 (1999) .......................................................................16

*Gordon & Co. v. Ross*,
    63 F. Supp. 2d 405 (S.D.N.Y. 1999).................................................16

*Greene v. Warner Music Group*,
    2024 WL 3045966 (S.D.N.Y. June 18, 2024) ...............................9, 10

*Greer v. Fox Corp.*,
    2022 WL 4093155 (S.D.N.Y. Sept. 7, 2022).....................................15

*Hearn v. Meyer*,
    664 F. Supp. 832 (S.D.N.Y. 1987) ...................................................12

*Hoehling v. Universal City Studios, Inc.*,
    618 F.2d 972 (2d 1980)......................................................................................11

*Hudson v. Universal Studios, Inc.*,
    2008 WL 4701488 (S.D.N.Y. Oct. 23, 2008) ......................................................21

*Iwachiw v. N.Y.S. Department of Motor Vehicles*,
    396 F.3d 525 (2d Cir. 2005)................................................................................3

*Jack v. Evonik Corp.*,
    79 F.4th 547 (5th Cir. 2023) ..............................................................................17

*Jackson National Life Insurance Co. v. Merrill Lynch & Co.*,
    32 F.3d 697 (2d Cir. 1994)..................................................................................2

*In re Jackson*,
    972 F.3d 25 (2d Cir. 2020)...........................................................................13, 14

*Jeffery v. City of New York*,
    113 F.4th 176 (2d Cir. 2024) ..............................................................................2

*Jones v. Administrators of the Tulane Education Fund*,
    51 F.4th 101 (5th Cir. 2022) ..............................................................................19

*Jorgensen v. Epic/Sony Records*,
    351 F.3d 46 (2d Cir. 2003)..................................................................................8

*Kregos v. Associated Press*,
    937 F.2d 700 (2d Cir. 1991)...........................................................................10, 13

*Lerner v. Fleet Bank, N.A.*,
    459 F.3d 273 (2d Cir. 2006)...............................................................................19

*Luv N' Care, Ltd. v. Goldberg Cohen, LLP*,
    703 F. App'x 26 (2d Cir. 2017) .........................................................................16

*Melendez v. Sirius XM Radio, Inc.*,
    50 F.4th 294 (2d Cir. 2022) ......................................................................13, 14, 15

*Mena v. Fox Entertainment Group, Inc.*,
    2012 WL 4741389 (S.D.N.Y. Sept. 29, 2012)..................................................10, 11

*Mobarak v Mowad*,
    117 A.D.3d 998 (2d Dep't 2014) .......................................................................19

*Muller v. Twentieth Century Fox Film Corp.*,
    794 F. Supp. 2d 429 (S.D.N.Y. 2011)............................................................14, 15

*NYNEX Corp. v. Discon, Inc.*,
   525 U.S. 128 (1998) ............................................................................................ 20

*Parker v. Chet Morrison Contractors, LLC*,
   2024 WL 3970312 (E.D. La. Aug. 28, 2024) .................................................... 17

*Pasternack v. Laboratory Corp. of America Holdings*,
   807 F.3d 14 (2d Cir. 2015) ............................................................................... 17

*Paul F. Gaito Architecture, LLC v. Simone Development Corp.*,
   602 F.3d 57 (2d Cir. 2010) ................................................................................. 7

*Piuggi v. Good for You Productions LLC*,
   2024 WL 3274638 (S.D.N.Y. July 2, 2024) ....................................................... 8

*Rahman v. Allstate Insurance Co.*,
   644 F. Supp. 3d 231 (E.D. La. 2022) ............................................................... 19

*Reyher v. Children's Television Workshop*,
   533 F.2d 87 (2d Cir. 1976) ............................................................................... 10

*Rogers v. Grimaldi*,
   875 F.2d 994 (2d Cir. 1989) ............................................................................. 15

*S.H. v. Diocese of Brooklyn*,
   205 A.D.3d 180 (2d Dep't 2022) ...................................................................... 17

*Semien v. Harpo Films, Inc.*,
   2020 WL 355896 (W.D. La. Jan. 21, 2020) ................................................. 16, 17

*Seren Fashion Art & Interiors, LLC v. B.S.D. Capital, Inc.*,
   2023 WL 7529768 (S.D.N.Y. Nov. 13, 2023) ................................................... 20

*Silberstein v. Fox Entertainment Group, Inc.*,
   424 F. Supp. 2d 616 (S.D.N.Y. 2004) ................................................................ 9

*Slocum v. Sears Roebuck & Co.*,
   542 So. 2d 777 (La. Ct. App. 1989) ................................................................. 18

*SnoWizard, Inc. v. Robinson*,
   2011 WL 5024350 (E.D. La. Oct. 19, 2011) .................................................... 17

*Stephano v. News Group Publications, Inc.*,
   64 N.Y.2d 174 (1984) ....................................................................................... 18

*Synergy Management, LLC v. WDM, Inc.*,
   2021 WL 3057411 (M.D. La. July 20, 2021) .................................................... 21

*Tanksley v. Daniels*,
   259 F. Supp. 3d 271 (E.D. Pa. 2017) ....................................................................................11

*Taxi Tours Inc. v. Go N.Y. Tours, Inc.*,
   41 N.Y.3d 991 (2024) ...........................................................................................................20

*Taxicab Ins. Store, LLC v. American Service Insurance Co.*,
   224 So. 3d 451 (La. 4th Cir. 2017) ......................................................................................20

*Urbont v. Sony Music Entertainment*,
   831 F.3d 80 (2d Cir. 2016)....................................................................................................13

*Warner Bros. v. American Broadcasting Cos.*,
   720 F.2d 231 (2d Cir. 1983)....................................................................................................9

*Warner v. Amazon.com, Inc.*,
   2023 WL 6317954 (S.D.N.Y. Sept. 28, 2023).....................................................................13

*Whitehead v. CBS/Viacom*,
   315 F. Supp. 2d 1 (D.D.C. 2004) .....................................................................................1, 24

*Whitehead v. Judicial Conference*,
   2013 WL 4777333 (E.D. Mo. Sept. 5, 2013) .......................................................................24

*Whitehead v. Netflix Inc.*,
   2022 WL 11098821 (S.D.N.Y. Oct. 17, 2022) ....................................................2, 3, 23, 24

*Whitehead v. Netflix, Inc.*,
   830 F. App'x 967 (9th Cir. 2020) ...........................................................................................4

*Whitehead v. Paramount Pictures Corp.*,
   145 F. Supp. 2d 3 (D.D.C. 2001) ...........................................................................................4

*Whitehead v. Paramount Pictures Corp.*,
   2009 WL 1491402 (E.D. Va. May 26, 2009) ...................................................................4, 24

*Whitehead v. Sony Pictures*,
   2016 WL 8732631 (D. Minn. Apr. 22, 2016) ...................................................................1, 24

*Whitehead v. Time Warner, Inc.*,
   2000 WL 33542703 (D.D.C. June 14, 2000)....................................................................1, 24

*Whitehead v. Travelers Ins. Co.*,
   2021 WL 3130089 (D. Conn. July 23, 2021) .........................................................................3

*Whitehead v. Viacom*,
   233 F. Supp. 2d 715 (D. Md. 2002)........................................................................................4

*Whitehead v. Walt Disney Co.*,
  2024 WL 3678257 (S.D.N.Y. July 23, 2024) ...................................................................23, 24

*Whitehead v. White & Case, LLP*,
  2012 WL 1795151 (W.D. La. Apr. 19, 2012) ...................................................................3, 23

*Whitehead v. Wickham*,
  2005 WL 2874975 (D.C. Super. Ct. Sept. 6, 2005) ...............................................................4

*In re Whitehead*,
  2021 WL 4735849 (8th Cir. Mar. 10, 2021) .........................................................................24

*Zappin v. Comfort*,
  2022 WL 6241248 (S.D.N.Y. Aug. 29, 2022) ...................................................................22, 25

**Statutes**

15 U.S.C. §§ 1 and 2 ...................................................................................................................20

17 U.S.C. § 301 ....................................................................................................................13, 14

28 U.S.C. § 1651 ......................................................................................................................1, 22

CPLR 202 ................................................................................................................................15, 16

2024 La. Sess. Law Serv. Act 423 ...............................................................................................16

La. Civil Code art. 2298 ...............................................................................................................19

N.Y. Civil Rights Law §§ 50, 51 .................................................................................................18

**Other Authorities**

Restatement (Second) of Torts § 652A (1977) .............................................................................18

Defendants The Walt Disney Company, Hulu LLC and National Geographic Partners, LLC (collectively, "Defendants")[1] respectfully submit this memorandum of law in support of their motion (1) to dismiss the Complaint pursuant to Rule 12(b)(6), and (2) for the entry of an injunction against Plaintiff David Louis Whitehead ("Whitehead" or "Plaintiff") pursuant to the All Writs Act, 28 U.S.C. § 1651, barring him from filing new cases in this District or making new filings in this action without leave of this Court.

## PRELIMINARY STATEMENT

Over the last twenty-five years, Plaintiff has repeatedly claimed that biographical films or television series infringe works that he had previously written about the same subject matter. This includes Whitehead's allegations that a television movie about Mike Tyson infringed Plaintiff's copyright in a short story he wrote about the famous boxer, *see Whitehead v. Time Warner, Inc.* ("*Time Warner*"), 2000 WL 33542703, at *2 (D.D.C. June 14, 2000),[2] that the Joyce Carol Oates book *Blonde* about Marilyn Monroe infringed his play about the actress, *see Whitehead v. CBS/Viacom* ("*CBS/Viacom*"), 315 F. Supp. 2d 1, 3 (D.D.C. 2004), and that the Miles Davis biopic *Miles Ahead* infringed on Plaintiff's play about the trumpeter, *see Whitehead v. Sony Pictures* ("*Sony Pictures*"), 2016 WL 8732631, at *2 (D. Minn. Apr. 22, 2016), *R. & R. vacated as moot*, 2016 WL 3064074 (D. Minn. May 31, 2016).  Plaintiff has now turned to the subject of Aretha Franklin, claiming that Defendants' show about the famous singer infringes on his copyrights in a play and two adapted film screenplays.  Because Plaintiff has utterly failed to meet the required pleading standard for any of his claims, they must be dismissed.

With respect to his copyright claim, Plaintiff has not pleaded at least two required

---

[1] Plaintiff names "Hulu" and "National Geographic Corporation" as Defendants in this matter. Their correct corporate names are Hulu LLC and National Geographic Partners, LLC.

elements: (1) direct copying or access to his works and (2) that his works and Defendants' series were similar beyond the non-copyrightable facts of Ms. Franklin's life and storytelling devices common to films of this type.  The Copyright Act preempts most of his other claims – and all of his tort claims -- many of which are in any event time barred.  Even if Plaintiff could overcome these serious deficiencies, he has failed to plead the basic elements of each of those claims.

In addition to dismissing this case, this Court should enter an order barring Plaintiff from filing future lawsuits in this District or additional papers in this case without advance leave. Plaintiff "has an extensive history of filing litigation in federal courts that have been deemed frivolous and vexatious."  *Whitehead v. Netflix Inc*. ("*Netflix*"), 2022 WL 11098821, at *3 (S.D.N.Y. Oct. 17, 2022).  Numerous other Districts have such orders in place.  This Court should join them.

## STATEMENT OF FACTS[3]

### A. Aretha Franklin

The late Aretha Franklin, the "Queen of Soul," is still a household name because of her incredible commercial success with soulful classics, including "Chain of Fools," "Think," and Respect."[4]  Ms. Franklin's life has been told in many creative works, including *Respect* (2021), starring Jennifer Hudson, *see* https://www.imdb.com/title/tt2452150/.

---

[2] Defendants will provide Plaintiff with copies of this and the other cases reported exclusively in computerized databases cited in this Memorandum, as required by Local Rule 7.2.

[3] For purposes of this Motion only, Defendants accept the Complaint's allegations as true.  *See Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co.*, 32 F.3d 697, 699-700 (2d Cir. 1994).

[4] The Court may take judicial notice of facts concerning Ms. Franklin's life and related reports, "insofar as they detail widely documented events that plaintiffs themselves reference or generally acknowledge in their pleadings." *See Jeffery v. City of New York*, 113 F.4th 176, 179 (2d Cir. 2024); *see also Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 300-01 (S.D.N.Y. 2012) (taking notice of historical facts in context of ruling on substantial similarity for Rule 12(c) motion).

Renditions of Ms. Franklin's life story inevitably touch on the influence her father, famous in his own right for his work as a preacher and as a civil rights leader, had on her career. *E.g.* John Blake, *Before Aretha Franklin was a superstar, her father shone on a different stage*, CNN (Aug. 30, 2018), https://www.cnn.com/2018/08/30/us/aretha-franklin-father/index.html; Michelle Darrisaw, *Aretha Franklin's Father Had A Strong Influence On Her Career*, Southern Living (Feb. 24, 2024), https://www.southernliving.com/culture/music/aretha-franklin-queen-of-soul.  Rev. Franklin was shot during a robbery in 1979, and was in a coma until his death in 1984.  UPI, *C.L. Franklin, 69, Activist And Father of Aretha Franklin*, N.Y. Times (July 8, 1984), https://www.nytimes.com/1984/07/28/obituaries/cl-franklin-69-activist-and-father-of-aretha-franklin.html.

### B.  Plaintiff

Plaintiff is a resident of Bossier Louisiana.  Compl. ¶¶ 1-4.  He has an "extensive history" of filing "frivolous and vexatious" claims which has been noted by courts nationwide, including in this District.  *See Netflix*, 2022 WL 11098821, at *3; *see Whitehead v. Travelers Ins. Co.*, 2021 WL 3130089, at *8 (D. Conn. July 23, 2021) ("Mr. Whitehead has brought these same baseless allegations regarding the same alleged 'copyright' issue and alleged 'biases' in various courts across the nation, often leading to him being both barred and sanctioned by those courts.").[5]  Plaintiff's filings have been restricted in at least six different jurisdictions.  *See, e.g., Whitehead v. White & Case, LLP* ("*White & Case*"), 2012 WL 1795151, at *4 (W.D. La. Apr. 19, 2012) (ordering pre-filing restrictions against Mr. Whitehead and dismissing his complaint "to avoid any further waste of the court's time or the incurring of attorney fees and expenses by

---

[5] This court may take judicial notice of past vexatious litigation in ruling on a motion to restrict a litigant's access to courts.  *See Iwachiw v. N.Y.S. Dep't of Motor Vehicles*, 396 F.3d 525, 529 (2d Cir. 2005).

the many defendants"), *R. & R. adopted*, 2012 WL 1795148 (W.D. La. May 16, 2012), *appeal dismissed*, 519 F. App'x 330 (5th Cir. 2013); *Whitehead v. Paramount Pictures Corp.* ("*Paramount*"), 2009 WL 1491402, at *3 (E.D. Va. May 26, 2009), *aff'd in part sub nom. Whitehead v. Paramount Pictures, Inc.*, 366 F. App'x 457 (4th Cir. 2010); *Whitehead v. Wickham* ("*Wickham*"), 2005 WL 2874975, at *3 (D.C. Super. Ct. Sept. 6, 2005); *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 726 (D. Md. 2002); *Whitehead v. Paramount Pictures Corp.*, 145 F. Supp. 2d 3, 5 (D.D.C. 2001), *aff'd sub nom. Whitehead v. Paramount Picture Corp.*, 2001 WL 936260 (D.C. Cir. July 27, 2001); *see also Whitehead v. Netflix, Inc.*, 830 F. App'x 967, 968 (9th Cir. 2020) (dismissing appeal of Whitehead's dismissal under a pre-filing vexatious litigant order).  As one court noted, many of these cases involve claims "against various media outlets and individual writers, producers, songwriters, and others based upon the perceived misappropriation of his ideas for books, movies, songs, and other publications."  *Wickham*, 2005 WL 2874975, at *2.

### C.  Plaintiff's Creative Works and Pitch

Plaintiff contends that he owns the copyrights in a play, "My Aretha" and two screenplays for a film adaptation of that play, "Aretha" and "Aretha II."  Compl. ¶¶ 10-11. According to documents submitted with the Complaint, "My Aretha" was a biographical play about Ms. Franklin that Plaintiff produced in early 2000s, which received praise from viewers and local critics.  *See* Compl. at 17-26.  In subsequent years, Plaintiff shopped his film around to producers, including to representatives of Ms. Franklin.  *Id.* at 27-35.

On July 30, 2017, Plaintiff emailed Hulu employees to pitch his film project.  Compl. ¶ 7; *id.* Exs. A-B.  In the first email chain, Whitehead emailed two Hulu employees and requested that they "please get this information to the appropriate individuals on how my agent and lawyer

can submit the screenplay 'Aretha' and film project to Hulu for serious review for production."

*Id.* Ex. A.  That same day, Hulu's Gaude Paez responded as follows:

> As a company policy, we do not accept any unsolicited materials, which includes ideas, synopses, scripts, reels, pitches, etc.  For this reason, I cannot read through your email, and I am forwarding this correspondence to our legal department for their records.

*Id.*  Whitehead responded "I have an agent (WGA literary) who could submit....," to which Paez responded, "Then your agent will know the appropriate parties to contact at Hulu."  *Id.*

In the second email exhibit, also dated July 30, 2017, Mr. Whitehead addressed his email to the then-CEO of Hulu.  Compl. Ex. B.  Plaintiff broadly described the film as "call[ing] for multiple Aretha Franklins, and the lead who will tell the story based on the musical play version 'My Aretha,'" and asked that Hulu "join this project for film development and production."  *Id*.  Plaintiff's email also referenced an attachment with a "potential cast."  *Id.*  Plaintiff did not submit the script for the film with his unsolicited idea submission, and did not receive a response.  *Id.*

Mr. Whitehead does not allege that his agent submitted his screenplays, or that any of the Defendants ever had access to the actual screenplays or play.  *See generally* Compl.

**D.  Genius: Aretha and Plaintiff's Claims**

In 2017, the television series Genius, which is an "an anthology series focusing on the personal and professional stories of the world's most brilliant innovators," premiered on National Geographic.  *See* Genius: Aretha, ABC, https://abc.com/show/f695f259-cff6-4bf9-89ce-8cb6931028d8/about-the-show (last visited Sept. 26, 2024).  In March 2021, Defendants released Season 3, which followed the life of Ms. Franklin.  *Id.*; *see also* Compl. ¶ 11.  Season 3 "explore[s] Aretha Franklin's musical genius, her incomparable career, and the immeasurable

impact she has had on music and culture." *Id.* There are eight nearly hour-long episodes in the

Genius: Aretha season.

On March 21, 2024, Plaintiff filed this lawsuit, claiming that the Genius: Aretha episodes

are "strikingly similar" to his works about Ms. Franklin, and lodging claims for violation of the

Copyright Act, Lanham Act, and seven additional torts. Whitehead alleges Defendants'

infringement of his copyright through

> fragmented and unauthorized copying of My Aretha, Aretha and Aretha II
> associated with venue, setting, performances of multiple singers as Aretha
> Franklin, staging, sequences of songs, events and performances, honoring death of
> key characters, use of Reporter as a vehicle for story-telling, composition of
> music similarity between Genius Aretha and Aretha II, similarity between scenes,
> striking dialogue and performances, striking dialogue between father and
> daughter, and striking dialogue of death scenes using same song relating to
> storyline of events, striking similarity with mood, characters, sequence of events
> and dialogue between the stories.

 Compl. ¶ 12.

Each of Plaintiff's eight additional claims for negligence, invasion of privacy, unfair

business practices and dealings, Lanham Act violations, unjust enrichment, breach of implied

contract, fraud, and anti-trust violations are based on the same underlying act, the production and

broadcast of the Genius: Aretha series which, Plaintiff claims, was based on his copyrighted

works. *See* Compl. at 5-7.

## **ARGUMENT**

To survive a motion to dismiss, "a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (allegations must

"raise a right to relief above the speculative level"). "[A] formulaic recitation of the elements of

a cause of action will not do." *Id*. "While legal conclusions can provide the framework of a

complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.  Courts take

the allegations of a complaint as true for purposes of a Rule 12 motion, but they "need not credit

conclusory statements unsupported by assertions of facts or legal conclusions and

characterizations presented as factual allegations." *Buckler v. Craft Beekman, LLC*, 2024 WL

3274509, at *2 (S.D.N.Y. July 2, 2024) (citation omitted).  Similarly, a court is not "constrained

to accept as truth" pleadings "that are contradicted either by statements in the complaint itself or

by documents upon which its pleadings rely, or by facts of which the court may take judicial

notice." *Id.* (citation omitted).

## I.    PLAINTIFF'S COPYRIGHT INFRINGEMENT CLAIM IS DEFICIENT

To establish a claim of copyright infringement, Plaintiff "must demonstrate that: (1) the

defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a

substantial similarity exists between the defendant's work and the protectible elements of

plaintiff's work." *Abdin v. CBS Broad., Inc.*, 971 F.3d 57, 66 (2d Cir. 2020) (citation and

internal marks omitted).  A court may "determine[] non-infringement as a matter of law" on "a

Rule 12(b)(6) motion to dismiss." *Paul F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602

F.3d 57, 59 (2d Cir. 2010).  Plaintiff has failed to establish either requirement here.

### A.    Plaintiff Has Failed to Allege Actual Copying

At the outset, Plaintiff must allege that Defendants copied his copyrighted materials.

"Actual copying can be shown through either (1) direct evidence of copying or (2) circumstantial

evidence that the defendants had access to the plaintiff's work." *Clanton v. UMG Recordings,

Inc.*, 556 F. Supp. 3d 322, 327-28 (S.D.N.Y. 2021).  Plaintiff does not offer any allegations

providing direct evidence of copying.  Instead, he appears to rely on Defendants' purported

access to meet his burden.

A plaintiff may show "access" by presenting facts showing either (i) "a particular chain of events by which the defendant might have gained access to the work," or (ii) "that plaintiff's work was widely disseminated" such that a court can infer access.  *Id.* (internal marks omitted). The access allegations "cannot be based on mere 'speculation or conjecture.'"  *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003).  Rather, "[a]ccess means that an alleged infringer had a 'reasonable possibility'—not simply a 'bare possibility'—of [accessing] the prior work.'"  *Piuggi v. Good for You Prods. LLC*, 2024 WL 3274638, at *8 (S.D.N.Y. July 2, 2024) (quoting *Jorgensen*, 351 F.3d at 51 (dismissing where access allegations were "too tenuous to plausibly support his claims")); *Castro v. Cusack*, 2019 WL 3385218, at *7 (E.D.N.Y. July 26, 2019) (finding plaintiff's theory of access based on the alleged dissemination of a script to defendant's agent was "wholesale speculation").

Here, Whitehead does not allege Defendants ever had access to his play or screenplays – he simply alleges that he "pitched" his film project to Hulu in 2017.  Compl. ¶¶ 7, 8.  As the exhibits attached to his Complaint reveal, this supposed pitch did not ever get off the ground, let alone result in anyone reading his play or screenplays.  Plaintiff emailed Hulu to ask how he could submit his screenplay, and a Hulu employee responded to explain that company policy forbade review of unsolicited materials and therefore his email would not be read.  *See* Compl. Ex. A at 1.  That plaintiff sent a separate email to the CEO of Hulu, *see id.*, Ex. B, without any attachments and in complete disregard of Hulu's prior admonition against unsolicited materials and advice that such emails would not be read, does not suggest, much less establish, that the CEO of Hulu read that email in violation of his own company's policy.  *See id.*

Whitehead also does not allege that his works were widely disseminated.  "Unpublished works . . . are considered not to have been widely disseminated."  *Castro*, 2019 WL 3385218, at

*7 (internal marks omitted).  The play and screenplays were registered as unpublished works in

2006.  *See* Compl. ¶ 10.  Plaintiff does not allege that they were subsequently published.  None

of these works were ever "commercially released" or "readily available on the market," and they

did not "otherwise enjoy[] considerable commercial success." See *Greene v. Warner Music Grp.*,

2024 WL 3045966, at *5 (S.D.N.Y. June 18, 2024) (rejecting claim on this basis).  Plaintiff also

cannot demonstrate wide dissemination through press coverage of local productions of his plays.

*See Silberstein v. Fox Entm't Grp., Inc.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004) ("no

inference of access may . . . be drawn from media coverage absent any signs that [the work] was,

even for a moment, popular or widely available for public consumption"), *aff'd sub nom.*

*Silberstein v. John Does 1-10*, 242 F. App'x 720 (2d Cir. 2007).

Because Plaintiff has failed to meet his burden to allege direct copying or access such

that it would be reasonable to infer copying, his copyright claim should be dismissed.

### B.    Plaintiff Has Failed to Allege Striking or Substantial Similarity

Plaintiff also has not met his burden to show that Genius: Aretha is similar to his works.

Two different potential standards apply here: (1) substantial similarity and (2) striking similarity.

Substantial similarity, which applies if the plaintiff demonstrates access, "is more permissive,

and requires a finding that similarities between the two works would not be expected to arise if

the works had been created independently."  *Greene*, 2024 WL 3045966, at *9 (internal marks

omitted).  If only the "non-copyrightable elements of the plaintiff's work" are similar to those in

the defendant's work, the two works are not substantially similar.  *Warner Bros. v. Am. Broad.*

*Cos.*, 720 F.2d 231, 240 (2d Cir. 1983).  Where, as here, the plaintiff fails to allege access, "a

claim may only survive . . . by satisfying the more demanding standard of striking similarity,

requiring Plaintiff to show that the works are 'so strikingly similar as to preclude the possibility

9

of independent creation.'"  *Greene*, 2024 WL 3045966, at *9.  Plaintiff cannot meet either standard.

For a copyright claim to be actionable, "the alleged similarities must arise from 'protected aesthetic expressions original to the allegedly infringed work, [rather than] ... something in the original that is free for the taking.'"  *Allen v. Scholastic Inc.*, 739 F. Supp. 2d 642, 654 (S.D.N.Y. 2011).  Where "a work incorporates unprotectible elements from the public domain," courts will apply the "more discerning observer test, which requires substantial similarity between those elements, and only those elements, that provide copyrightability to the allegedly infringed [work]."  *Abdin*, 971 F.3d at 66 (internal marks omitted).  When comparing the parties' works on a motion to dismiss, "a court must filter out the unprotected elements of the copyrighted work—*e.g.*, its elements that are unoriginal or 'merge' with ideas or concepts— before comparing the copyrighted and the allegedly infringing works."  *Boyle v. Stephens, Inc.*, 1998 WL 80175, at *3 (S.D.N.Y. Feb. 25, 1998), *aff'd*, 21 F. App'x 76 (2d Cir. 2001).

Copyright protection does not extend to "mere ideas, concepts, or principles, which are permanent denizens of the public domain."  *Mena v. Fox Entm't Grp., Inc.*, 2012 WL 4741389, at *3 (S.D.N.Y. Sept. 29, 2012).  "The fundamental copyright principle that only the expression of an idea and not the idea itself is protectable . . . has produced a corollary maxim that even expression is not protected in those instances where there is only one or so few ways of expressing an idea that protection of the expression would effectively accord protection to the idea itself."  *Kregos v. Associated Press*, 937 F.2d 700, 705 (2d Cir. 1991) (internal citation omitted); *see, e.g.*, *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976) ("[S]imilarity of expression . . . necessarily results from the fact that the common idea is only

capable of expression in more or less stereotyped form will preclude a finding of actionable similarity.").

This is particularly true in the case of works based on historical events, like the play, screenplays, and television program here. The Second Circuit has noted "the scope of copyright in historical accounts is narrow indeed," and copyright claims based on historical figures and events "are rarely successful. *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 974 (2d 1980). This is because there is a "public benefit in encouraging the development of historical and biographical works and their public distribution." *Effie Film, LLC v. Murphy*, 564 F. App'x 631, 633 (2d Cir. 2014). To avoid a "chilling effect" on the creation of biographical works, "broad latitude must be granted to subsequent authors who make use of historical subject matter, including theories or plots." *Id.*

Copyright protection also does not extend to "scènes à faire," that is "sequences of events which necessarily follow from a common theme, . . . and incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Abdin*, 971 F.3d at 67 (internal citations and quotation marks omitted). "[I]f a work is to be set in Victorian England, for example, travel by carriage, glittering ballrooms, stiff dinners, conversations over tea, and tensions arising from an overly-rigid system of class and gender roles are *de rigueur*. Similarly, when Venice is the backdrop, there can be little creativity in the decision to depict gondolas and canals." *Effie Film, LLC v. Murphy*, 932 F. Supp. 2d 538, 554 (S.D.N.Y. 2013), *aff'd*, 564 F. App'x 633. This can also include such elements as the use of musical interludes, *see Tanksley v. Daniels*, 259 F. Supp. 3d 271, 293 (E.D. Pa. 2017), or the "motivation of a lost loved one," *Mena*, 2012 WL 4741389, at *13. Courts may judicially notice these general elements. *See Effie Film*, 909 F. Supp. 2d at 300.

11

In his Complaint, Plaintiff does not attach either his works or Defendants' series. Instead, he simply alleges that "striking similarities" exist, Compl. ¶ 10, pointing to alleged similarities in "venue, setting, performances of multiple singers as Aretha Franklin, staging, sequences of songs, events and performances, honoring death of key characters, use of Reporter as a vehicle for story-telling, and composition of music similarity between Genius Aretha and Aretha II," as well as "similarity between scenes, striking dialogue and performances, striking dialogue between father and daughter, and striking dialogue of death scenes using same song relating to storyline of events, striking similarity with mood, characters, sequence of events and dialogue between the stories," *id.* ¶ 12. Notably, he does not cite to specific parts of either work or provide actual examples. By offering only the conclusion that these similarities exist without alleging specific facts providing support, Plaintiff has failed to meet his pleading burden. *See Iqbal*, 556 U.S. at 670.

Moreover, even in this conclusory list, Plaintiff largely only alleges similarities involving historical facts. It is unsurprising that two biographical works about Aretha Franklin discussing events in her life would take place in similar venues and settings, describe the death of key figures in her life, and include musical performances. Plaintiff also points to obvious and common storytelling devices, including "performances of multiple singers as Aretha Franklin" and the "use of Reporter as a vehicle for story-telling." Compl. ¶ 12.

Finally, any alleged "striking similarity with mood, characters, sequence of events and dialogue between the stories" is inevitable where the works are based on the life and times of the same person. Compl. ¶ 12. *See, e.g.*, *Hearn v. Meyer*, 664 F. Supp. 832, 851 (S.D.N.Y. 1987) (plot of biographical work was not copyrightable for "to the extent [it] has a plot or story, it is

derived solely from the lives of the various artists discussed in the work"). These similarities in expression of the same idea are not protectable. *See Kregos*, 937 F.2d at 705.

Thus, Plaintiff has failed to adequately allege substantial similarity. A plaintiff's "failure to adequately plead 'substantial similarity' necessarily means [p]laintiff has failed to plead 'striking similarity.'" *Warner v. Amazon.com, Inc.*, 2023 WL 6317954, at *8 n.8 (S.D.N.Y. Sept. 28, 2023). Plaintiff has therefore failed to plead this foundational element of a copyright claim as well.

## II.    PLAINTIFF'S STATE LAW CLAIMS ARE PREEMPTED, LARGELY UNTIMELY AND NOT PLAUSIBLY PLED

### A.    The Copyright Act Preempts Plaintiff's State Law Claims

Most of Plaintiff's state law claims must be dismissed pursuant to Section 301 of the Copyright Act, which "preempts state law claims to the extent that they assert rights equivalent to those protected by the Copyright Act, in works of authorship within the subject matter of federal copyright." *In re Jackson*, 972 F.3d 25, 33-34 (2d Cir. 2020). Although preemption is an affirmative defense, dismissal is appropriate if it "is evident from the face of the complaint." *Melendez v. Sirius XM Radio, Inc.*, 50 F.4th 294, 300 (2d Cir. 2022).

Under Section 301, "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright . . . are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). The Copyright Act thus "preempts state law claims asserting rights equivalent to those protected within the general scope of the statute." *Urbont v. Sony Music*

*Entm't*, 831 F.3d 80, 93 (2d Cir. 2016).  The Second Circuit conducts a two-part analysis to determine if statutory preemption applies.  *In re Jackson*, 972 F.3d at 42.

The first requirement for statutory preemption is the subject matter prong.  *Id.*  This "looks at the work that would be affected by the plaintiff's exercise of a state-created right, and requires (as an essential element of preemption) that the work come within the subject matter of copyright as specified by sections 102 and 103."  *Id.* (internal marks omitted); *see Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004).  Here, Plaintiff's claims involve the use of a play and two screenplays, Comp. ¶ 11.  These works of the performing arts easily satisfy the subject matter requirement.  *See, e.g.*, *Muller v. Twentieth Century Fox Film Corp.*, 794 F. Supp. 2d 429, 448 (S.D.N.Y. 2011) (claim involving improper use of screenplay satisfies first prong), *aff'd sub nom. Muller v. Anderson*, 501 F. App'x 81 (2d Cir. 2012).

The second part of statutory preemption is the "general scope requirement."  *Melendez*, 50 F.4th at 301.  To meet this requirement, the right the plaintiff asserts must be "equivalent to any of the exclusive rights within the general scope of copyright."  17 U.S.C. § 301(b)(3); *see In re Jackson*, 972 F.3d at 52.  "In other words, the challenged act must 'by itself, infringe one of the exclusive rights provided by federal copyright law' through 'reproduction, adaptation, performance, distribution or display.'"  *Melendez*, 50 F.4th at 307 (quoting *Briarpatch*, 373 F.3d at 305).  Here, Whitehead expressly pleads that his claims of negligence, violation of privacy, unfair business practices, unjust enrichment, and breach of implied contract[6] are based only on Defendants producing and broadcasting a film series based on his copyrighted works without permission.  *See* Compl. ¶ 11 & p. 5-7.  Courts routinely dismiss such claims as preempted.  *See, e.g.*, *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 228 (S.D.N.Y.

---

[6] Defendants are not moving for dismissal of the fraud and anti-trust claims on this ground.

2010) (negligence); *Melendez*, 50 F.4th at 308 (right of publicity); *Greer v. Fox Corp.*, 2022 WL 4093155, at *3 (S.D.N.Y. Sept. 7, 2022) (unfair competition and unjust enrichment), *aff'd sub nom.*, 2023 WL 2671796 (2d Cir. Mar. 29, 2023); *Muller*, 794 F. Supp. 2d at 448 (breach of implied contract).

The state law claims here should likewise be dismissed with prejudice on the ground that the Copyright Act preempts them.

**B.    The Statute of Limitations Has Expired for Most of Plaintiff's State Law Claims**

Setting aside whether Whitehead plausibly pled facts that would support his negligence, violation of privacy, unfair business practices, and fraud claims, the Court may dismiss them outright on the grounds that they are time barred.  Specifically, the Complaint alleges that the Defendants injured Plaintiff through their broadcast of a television series in March 2021.  *See* Compl. ¶¶ 11-12. This lawsuit was not filed until March 2024, three years later, and each of these causes of action is subject to a limitation period of less than three years.

A federal court sitting in diversity or exercising supplemental jurisdiction applies the conflict-of-laws rules of the state in which it sits.  *Rogers v. Grimaldi*, 875 F.2d 994, 1002 (2d Cir. 1989).  For a federal court sitting in New York, this includes the State's "borrowing statute" which provides that "[a]n action based upon a cause of action accruing without the state cannot be commenced after the expiration of the time limited by the laws of either the state or the place without the state where the cause of action accrued, except that where the cause of action accrued in favor of a resident of the state the time limited by the laws of the state shall apply."  CPLR 202.  In other words, under the borrowing statute, "a case filed by a non-resident plaintiff requires application of the shorter statute of limitations period, as well as all applicable tolling provisions, provided by either New York or the state where the cause of action

accrued." *Cantor Fitzgerald Inc. v. Lutnick*, 313 F.3d 704, 710 (2d Cir. 2002). CPLR 202 is "an exception to the normal New York conflicts rule of applying the law of the jurisdiction with the most significant contacts." *In re Gaston & Snow*, 243 F.3d 599, 608 (2d Cir. 2001). The statute "is to be applied as written, without recourse to a conflict of law analysis." *Id.* The borrowing statute "prevents forum shopping" by litigants seeking to work around time-barred claims, and "provides clarity for litigants." *Afanassieva v. Page Transp., Inc.*, 2022 WL 7205009, at *2 (2d Cir. Oct. 13, 2022).

"New York follows 'the traditional definition of accrual—a cause of action accrues at the time and in the place of the injury.'" *Cantor Fitzgerald*, 313 F.3d at 710 (quoting *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 529 (1999)). Under the borrowing statute, "a cause of action accrues where the injury is sustained rather than where the defendant committed the wrongful acts." *Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408 (S.D.N.Y. 1999). When the "injury is purely economic, the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Glob. Fin. Corp.*, 93 N.Y.2d at 529.

Whitehead's claims are untimely under Louisiana law, which is where he lives and sustained any economic loss from the purported unauthorized copying of his unpublished material. Compl. ¶ 1. Louisiana law "uses the civil-law term 'prescriptive period' rather than 'statute of limitations' or 'limitations period.'" *Luv N' Care, Ltd. v. Goldberg Cohen, LLP*, 703 F. App'x 26, 30 n.4 (2d Cir. 2017). At the time these claims accrued, Louisiana had a one-year prescriptive period for tort claims,[7] commencing "to run from the day injury or damage is sustained." *Semien v. Harpo Films, Inc.*, 2020 WL 355896, at *3 (W.D. La. Jan. 21, 2020). This

---

[7] Louisiana has extended this period to two years, but that new period was only given prospective application to actions arising after July 1, 2024. *See* 2024 La. Sess. Law Serv. Act 423 (H.B. 315). Even if a two-year limitations applied, these claims would still be untimely.

period applied to claims for negligence, *see Parker v. Chet Morrison Contractors, LLC*, 2024 WL 3970312, at *5 (E.D. La. Aug. 28, 2024); invasion of privacy, *see Semien*, 2020 WL 355896, at *3; and fraud, *see Semien*, 2020 WL 355896, at *3. Louisiana also has a one-year prescriptive period for claims of unfair business practices under the Louisiana Unfair Trade Practices Act. *See SnoWizard, Inc. v. Robinson*, 2011 WL 5024350, at *2 (E.D. La. Oct. 19, 2011).[8]

Because any injury occurred on March 21, 2021 and plaintiff did not file suit until March 21, 2024, three years later, all of these claim are time barred.

### C.    Plaintiff Has Not Plausibly Pled Any State Tort Claims

In his Complaint, Plaintiff also does not plead any facts to support his state law tort claims regardless of what state law applies. Rather, as to each court, Plaintiff has pled that Defendants committed the tort "when they produced and broadcast their fraudulent film series Genius Aretha based on plaintiff's copyrighted works: 'My Aretha', 'Aretha' and 'Aretha 2' without his permission grossing millions of dollars." *See* Claims 2, 3, 4, 6, 7, 8, 9.

#### 1.    Negligence (Claim 2)

Under either New York or Louisiana law,[9] to bring a negligence claim the plaintiff must plead at least "a duty owed to the plaintiff by the defendant" and a "breach of that duty." *Pasternack v. Lab. Corp. of Am. Holdings*, 807 F.3d 14, 19 (2d Cir. 2015) (New York); *Jack v.*

---

[8] To the extent New York has longer statutes of limitations for these torts, that is irrelevant under the borrowing statute. *See, e.g.*, *S.H. v. Diocese of Brooklyn*, 205 A.D.3d 180, 195 (2d Dep't 2022) (affirming dismissal of claims as untimely under the law of where claim allegedly took place even though they would have been timely under New York law); *2138747 Ontario, Inc. v Samsung C&T Corp.*, 144 A.D.3d 122, 129 (1st Dep't 2016) (same); *Afanassieva*, 2022 WL 7205009, at *2 (same).

[9] Because the two states' laws are the same on this point, this Court need not engage in a choice of law analysis. *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998).

*Evonik Corp.*, 79 F.4th 547, 556 (5th Cir. 2023) (Louisiana).  Whitehead does not allege that any of the Defendants owed him a duty of care or that they breached that duty.

    2.    <u>Invasion of Privacy (Claim 3)</u>

Plaintiff next alleges that Plaintiff "violated his privacy."  There are four traditional privacy interests which may be invaded: intrusion upon seclusion, appropriation of a person's name or likeness, public disclosure of private facts, and false light.  *See* Restatement (Second) of Torts § 652A (1977).  Plaintiff does not provide any specifics about which of his privacy interests was invaded or how such invasion occurred, and his claim may be dismissed on that basis alone.  *See Iqbal*, 556 U.S. at 678 (finding that an "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient to plead a claim).

Louisiana recognizes the four traditional common law privacy interests.  *See Slocum v. Sears Roebuck & Co.*, 542 So. 2d 777, 778 (La. Ct. App. 1989).  New York law does not but does allow a statutory claim under Section 51 of the New York Civil Rights Law that applies to a person whose "name, portrait, picture, likeness or voice" is used for advertising purposes or for the purposes of trade.  N.Y. Civil Rights Law §§ 50, 51; *see Stephano v. News Grp. Publications, Inc.*, 64 N.Y.2d 174, 182 (1984).  To the extent Plaintiff intended to plead a claim for misappropriation of a name or likeness, he makes no allegations that any Defendant used <u>his</u> name or likeness, as would be required under the law of either state, but rather that of Aretha Franklin.  Therefore, even if he elaborated on this point, he would be unable to establish a claim.

    3.    <u>Unfair Business Practices (Claim 4)</u>

Under Louisiana law, the "range of prohibited practices" under the Louisiana Unfair Trade Practices and Consumer Protection Law "is extremely narrow, as LUTPA prohibits only fraud, misrepresentation, and similar conduct, and not mere negligence."  *Delaware Valley Fish*

18

*Co. v. 3South LLC*, 601 F. Supp. 3d 7, 19 (M.D. La. 2022). Plaintiff has failed to plead any facts demonstrating Defendants engaged in fraud or misrepresentations.

Moreover, because Plaintiff claim is explicitly based on fraud, his claim must meet the pleading requirements of Rule 9(b). *See Rahman v. Allstate Ins. Co.*, 644 F. Supp. 3d 231, 241 (E.D. La. 2022). To comply with this rule, "the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006). Whitehead's Complaint and accompanying fraud statement, *see* Dkt. 3, do not articulate any of the elements of fraud, much less facts to support the elements. Rather, he broadly alleges "[t]here have been deceptions by individuals making financial offers to plaintiff concerning his books associated with corporations." *Id.* This Complaint is about a play and screenplay, not books, and even overlooking that discrepancy this claim is entirely lacking in detail.

### 4.    Unjust Enrichment (Claim 6)

Both New York and Louisiana law require that Plaintiffs plead facts demonstrating Defendants were unjustly enriched at Plaintiff's expense. *See Mobarak v Mowad*, 117 A.D.3d 998, 1001 (2d Dep't 2014) (plaintiff must plead "(1) the defendant was enriched, (2) at the plaintiff's expense, and (3) that it is against equity and good conscience to permit the defendant to retain what is sought to be recovered"); La. Civil Code art. 2298 ("A person who has been enriched without cause at the expense of another person is bound to compensate that person."). Whitehead does not plead Defendants were enriched at his expense.

### 5.    Breach of Implied Contract (Claim 7)

Both New York and Louisiana require that Plaintiff demonstrate an intent to agree. *Jones v. Adm'rs of the Tulane Educ. Fund*, 51 F.4th 101, 117 (5th Cir. 2022) (under Louisiana law,

there must be "an unequivocal intent to agree."); *Seren Fashion Art & Interiors, LLC v. B.S.D. Cap., Inc*., 2023 WL 7529768, at *4 (S.D.N.Y. Nov. 13, 2023) (there must be a "meeting of the minds").  Plaintiff has not pled nor submitted any documentation demonstrating Defendants had an explicit or implied agreement with Plaintiff with respect to his copyrighted materials.

      6.    <u>Fraud (Claim 8)</u>

Circumstances underlying claims of fraud must be stated with particularity under Fed. R. Civ. P. 9(b).  As discussed above, Plaintiff has utterly failed to meet these requirements here.

      7.    <u>Anti-Trust Violations (Claim 9)</u>

Plaintiff has not stated whether he brings the anti-trust claims pursuant to state or federal law, but regardless, it cannot pass muster.  New York and Louisiana anti-trust statutes, as well as the Sherman Act, 15 U.S.C. §§ 1 and 2, prohibit agreements or conspiracies to unreasonably restrain trade.  *Taxi Tours Inc. v. Go N.Y. Tours, Inc*., 41 N.Y.3d 991, 993 (2024) (claim pursuant to the Donnelly Act, General Business Law § 340 (1), "must allege both concerted action by two or more entities and a consequent restraint of trade within an identified relevant product market"); *Taxicab Ins. Store, LLC v. Am. Serv. Ins. Co*., 224 So. 3d 451, 463 (La. 4th Cir. 2017) (claim pursuant to Louisiana anti-trust law requires a showing that defendant "(1) engaged in a conspiracy (2) that restrained trade or injured competition (3) in a particular market"); *NYNEX Corp. v. Discon, Inc*., 525 U.S. 128, 133 (1998) ("Sherman Act's prohibition of '[e]very agreement in 'restraint of trade,' prohibits only agreements that unreasonably restrain trade.").  Plaintiff has not alleged any agreement or conspiracy between Defendants and any other party, nor has he alleged Defendants restrained his trade.

**III.**    **<u>PLAINTIFF'S LANHAM ACT CLAIM IS PREEMPTED AND OTHERWISE DOES NOT STATE A CLAIM</u>**

Plaintiff's Lanham Act claim fails for multiple reasons, including that the Copyright Act

claim preempts it, the time to bring such a claim has expired, and Plaintiff has not plausibly pled facts to support any such claim.

### A. *Dastar* Preemption Applies to this Claim

"The right to copy creative works, with or without attribution, is the domain of copyright, not of trademark or unfair competition." *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263 (S.D.N.Y. 2005). The Supreme Court ruled in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003), that the Lanham Act is designed to protect "the producer of . . . tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods." As a result, "[s]ince *Dastar*, Lanham Act claims arising from the alleged copying of creative work have been 'clearly foreclosed.'" *Hudson v. Universal Studios, Inc.*, 2008 WL 4701488, at *8 (S.D.N.Y. Oct. 23, 2008), *aff'd*, 369 F. App'x 291 (2d Cir. 2010).

Whitehead's Lanham Act claim falls easily into this category. He alleges that Defendants violated the Lanham Act by "engag[ing] in fraud and false designations infringing plaintiff's Aretha Franklin copyrighted materials." *See* Compl. at 6. This claim should be dismissed at the outset on this ground.

### B. A Presumption of Laches Applies to Plaintiff's Lanham Act Claim

Because the Lanham Act does not include a statute of limitations, the doctrine of laches applies to claims brought under it. *See Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 191-92 (2d Cir. 1996). To determine the prescriptive time period, courts are to "look to 'the most appropriate' or 'the most analogous' state statute of limitations for laches purposes." *Id.* (quoting *Wilson v. Garcia*, 471 U.S. 261, 266-68 (1985)). "Louisiana federal courts routinely apply the prescriptive period found in the Louisiana Unfair Trade Practices and Consumer Protection Law ('LUTPA'), which is one year." *Synergy Mgmt., LLC v. WDM, Inc.*, 2021 WL

3057411, at *3 (M.D. La. July 20, 2021); *see also CheckPoint Fluidic Sys. Int'l, Ltd. v. Guccione*, 888 F. Supp. 2d 780, 790 (E.D. La. 2012)).  As discussed above, these claims accrued more than a year before Plaintiff filed suit.

C.    **Plaintiff Otherwise Does Not Plead a Lanham Act Claim**

"To state a claim under the Lanham Act for trademark infringement, unfair competition, and false designation of origin, a plaintiff must establish that: (1) [plaintiff] owns a valid mark entitled to protection under the Lanham Act; (2) defendant used the protected mark in commerce, without plaintiff's consent; and (3) defendant's use of that mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Camelot Si, LLC v. ThreeSixty Brands Grp. LLC*, 632 F. Supp. 3d 471, 480 (S.D.N.Y. 2022).  Plaintiff has not alleged he holds a valid mark, that Defendants used that protected mark, or that Defendants' use would likely cause confusion.  For this third reason, Plaintiff's Lanham Act claim fails.

IV.   **THE COURT SHOULD ENTER AN ANTI-FILING INJUNCTION**

In addition to dismissing this case, Defendants respectfully request that the Court enter an order pursuant to the All Writs Act, 28 U.S.C. § 1651, enjoining Plaintiff from filing any new motions, papers, or requests for relief in this action, and from filing any new civil actions, without first seeking and obtaining leave from this Court.

"A court's power to restrict the litigation of abusive and vexatious litigants is an 'ancient one' that is now codified at 28 U.S.C. § 1651(a), the All Writs Act." *Zappin v. Comfort*, 2022 WL 6241248, at *24 (S.D.N.Y. Aug. 29, 2022) (citation omitted), *R. & R. adopted*, 2022 WL 4592551 (S.D.N.Y. Sept. 30, 2022).  The Second Circuit has identified the following factors to be considered in deciding whether to impose an anti-filing injunction:

(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, e.g., does the litigant have an objective good faith expectation of prevailing?; (3) whether the

litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.

*Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019).

As to the first factor, as discussed above, Whitehead has engaged in an extensive pattern of vexatious litigation, including in this District. *See Netflix*, 2022 WL 11098821, at *3 (warning Plaintiff that "should he file another complaint that is determined to be duplicative, frivolous, vexatious, or otherwise lacking in merit, the Court will order him to show cause why he should not be barred under 28 U.S.C. § 1651 from filing new actions without prior permission from the court"); *see also White & Case, L.L.P.*, 519 F. App'x at 332 (observing Whitehead's "history of extensive and vexatious litigation"). Whitehead has indicated he intends to waste Defendants' and the Court's time here too by filing baseless claims and motions – already, he moved for a preliminary injunction asking the Court to "direct action on the part of the Federal Bureau of Investigation, who has not been served and has no apparent connection to the intellectual property litigation," then moved for reconsideration when this request was denied. *Whitehead v. Walt Disney Co.* ("*Disney*"), 2024 WL 3678257, at *1 (S.D.N.Y. July 23, 2024), *reconsideration denied*, 2024 WL 3797310 (S.D.N.Y. Aug. 13, 2024). The first factor weighs heavily in Defendants' favor.

Second, Plaintiff does not have "an objective good faith expectation of prevailing" on the claims asserted here. *Eliahu*, 919 F.3d at 714. Whitehead has filed dozens of suits "alleg[ing] that movie studios or publishers stole his ideas for use in films or publications, or that public officials are engaged in wide ranging conspiracies directed at him." *White & Case*, 2012 WL 1795151, at *1. Like here, in many of those cases, Whitehead brought claims involving series about historical figures. "[C]ourts have repeatedly advised Whitehead [that] copyright law only

23

protects original expressions of ideas, not facts, ideas, or concepts themselves, not historical

figures, not stock themes or settings, and not isolated words or hackneyed phrases." *Sony*

*Pictures*, 2016 WL 8732631, at *3; *see, e.g.*, *CBS/Viacom*, 315 F. Supp. 2d at 11 ("life events are

unprotectable facts"); *Time Warner*, 2000 WL 33542703, at *2 ("Such alleged similarities,

particularly when actual people and a historical event are involved, simply are not sufficient to

prove copyright infringement."). This prong weighs in favor of an injunction.

Third, although Plaintiff is *pro se*, he has been bringing cases for more than twenty-five

years. Certainly, as Chief Judge Swain previously observed, "Plaintiff is or should have been

aware that his claims in this action were frivolous and vexatious." *Netflix*, 2022 WL 11098821,

at *3. This factor is at best neutral given Plaintiff's extensive experience in the courts.

Fourth, this action has caused Defendants to incur needless expense on a motion to

dismiss, and Plaintiff has additionally wasted court resources with his previous motions to enjoin

and for reconsideration that had "no apparent connection to the intellectual property litigation."

*Disney*, 2024 WL 3678257, at *1. This factor also weighs in favor of an injunction.

Finally, it is unlikely that other sanctions, including an attorneys' fees award, would be

an adequate remedy. *Eliahu*, 919 F.3d at 715. Other courts have determined, in imposing pre-

filing injunctions on Whitehead, that "there is no reason to believe any other form of sanctions

will cease plaintiff's filing of motions in this case or the initiation of new cases." *Paramount*,

2009 WL 1491402, at *4 (quoting *Wickham*, 2005 WL 2874975, at *4). Moreover, Plaintiff

often moves to proceed *in forma pauperis*, and would be unlikely to pay an attorney fee award,

so a monetary sanction would not likely deter him. *E.g.*, *In re Whitehead*, 2021 WL 4735849, at

*1 (8th Cir. Mar. 10, 2021) (granting Whitehead's motion to proceed *in forma pauperis*);

*Whitehead v. Judicial Conference*, 2013 WL 4777333, at *2 (E.D. Mo. Sept. 5, 2013), (same);

*see also Zappin*, 2022 WL 6241248, at *24 (anti-filing injunction appropriate "since Plaintiff continues to pursue *in forma pauperis* status, he likely does not have the resources to pay a monetary sanction, and has already demonstrated that monetary sanctions do not deter him from initiating duplicative proceedings").

Taken together, the weight of the five factors is heavily in favor of entering an injunction preventing Plaintiff from filing further actions in this Court or making further filings in this case.

## **CONCLUSION**

For each and all the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, enter an anti-filing injunction, and grant such other relief as this Court deems appropriate.

Dated:  September 27, 2024                    Respectfully submitted,

**BALLARD SPAHR LLP**

By:   */s/ Thomas B. Sullivan*
Thomas B. Sullivan
1675 Broadway, 19th Floor
New York, NY 10019
Telephone:  (212) 850-6139
Facsimile:  (212) 223-1942
sullivant@ballardspahr.com

Lauren P. Russell (*pro hac vice* forthcoming)
1909 K Street, NW, 12th Floor
Washington, DC 20006-1157
Telephone: (202) 661-7605
Facsimile: (202) 661-2299
russelll@ballarspahr.com

*Attorneys for Defendants*