```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___8/27/2025___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DAVID LOUIS WHITEHEAD,

                      Plaintiff,

          -against-

THE WALT DISNEY CO., et al.,

                    Defendants.

24-CV-02283 (MMG)

**OPINION & ORDER**

MARGARET M. GARNETT, United States District Judge:

    *Pro se* Plaintiff David Louis Whitehead brought this action against Defendants The Walt Disney Company ("Disney"), "Hulu," and "National Geographic Corporation" (collectively, "Defendants"), primarily asserting claims related to Defendants' alleged copying of Plaintiff's copyrighted works regarding singer and songwriter Aretha Franklin. Dkt. No. 1. Defendants moved to dismiss the Complaint in its entirety. Dkt. No. 31. The Court referred this action to Magistrate Judge Jennifer E. Willis for general pre-trial supervision and a Report & Recommendation on the motion to dismiss. Dkt. Nos. 51 & 77. On August 4, 2025, Judge Willis issued a Report & Recommendation, recommending that the motion to dismiss be granted and Plaintiff's claims be dismissed with prejudice. Dkt. No. 150 (the "R&R"). Following the R&R, Plaintiff filed objections (Dkt. No. 151) as well as various "emergency motions" seeking to, *inter alia*, supplement the record before the Court and to "strike" Judge Willis' R&R (*see* Dkt. Nos. 153, 155, 157). For the reasons discussed herein, the R&R is ADOPTED IN FULL, with the modification that an anti-filing injunction shall be imposed against Plaintiff.

### FACTS & PROCEDURAL HISTORY

    The Court assumes familiarity with the facts and procedural history of this action and incorporates by reference the background section of the R&R, which accurately describes the

history of this matter.  *See* R&R at 2–3.  The following briefly summarizes the relevant details,

which are assumed true solely for purposes of this Opinion.

      Plaintiff is the copyright owner of three works under Registration Number

PAU003103639, issued on December 21, 2006: (1) "My Aretha," a musical play; (2) "Aretha," a

film project; and (3) "Aretha II" (collectively, the "Whitehead Aretha Works").  *See* Dkt. No. 1

("Complaint" or "Compl.") ¶¶ 9–10.  On July 30, 2017, Plaintiff pitched "Aretha" for potential

production to several Hulu employees, one of whom responded by representing that they "[could

not] read through [Plaintiff's] email" because Hulu policy prohibited accepting unsolicited

materials.  *See id.* ¶¶ 7–8 & Exs. A & B (email to then-CEO of Hulu).  In response, Plaintiff

represented that he had an agent who could submit his works to Hulu, but he does not allege that

any agent submitted his works or that the works were submitted through any other means.  *See*

*id.* Ex. A.  Years later, "[o]n or about March 21, 2021," Defendants released "Genius Aretha," an

anthology series which was broadcast on the National Geographic channel, and which allegedly

infringed on the Whitehead Aretha Works by copying, among other things, particular events and

performances, as well as using "striking[ly]" similar dialogue, characters, and sequences of

events.  *See id.* ¶¶ 11–12; *see also* Dkt. No. 32 ("Mot.") at 5–6 (explaining the series first

premiered in 2017 and the third season was released in 2021).

      Plaintiff commenced this action, proceeding *pro se*, on March 21, 2024.  Since then,

while in fact very little has substantively occurred in this action, Plaintiff has filed dozens of

submissions on the docket, many of which have been frivolous, premature, or otherwise

meritless and irrelevant, even viewed through the favorable lens afforded to *pro se* litigants.  *See,*

*e.g.*, Dkt. No. 13 (seeking injunctive relief related to Plaintiff's attorney, who has not appeared);

Dkt. No. 17 (seeking reconsideration of the denial of Dkt. No. 13); Dkt. No. 50 (seeking to unseal miscellaneous federal investigations).

On September 27, 2024, Defendants moved to dismiss the Complaint in its entirety for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and requested an anti-filing injunction pursuant to the All Writs Act, 28 U.S.C. § 1651. Dkt. No. 31. On October 11, 2024, Plaintiff filed his initial opposition, *see* Dkt. Nos. 41–43, but subsequently indicated he intended to file an amended complaint in lieu of opposing the motion to dismiss, *see* Dkt. No. 44. The Court granted Plaintiff leave to file an amended complaint by December 20, 2024, but Plaintiff did not do so. *See* Dkt. No. 52. On January 10, 2025, Defendants filed their reply in support of their motion to dismiss. Dkt. No. 64. Over a month after briefing on the motion to dismiss was complete, Plaintiff filed two affidavits that Judge Willis construed—and the Court shall construe—as a further opposition. Dkt. Nos. 95 & 98. Judge Willis granted Defendants leave to file a sur-reply, which was filed on May 6, 2025. *See* Dkt. Nos. 132 & 138.

While the parties briefed the motion to dismiss, Plaintiff filed numerous other non-dispositive motions, which occasioned a motion by Defendants to hold all non-dispositive motions and requests filed by Plaintiff in abeyance, pending a ruling on the motion to dismiss. Dkt. No. 86. On March 26, 2025, Judge Willis held a conference during which, among other things, she carefully explained and walked through the procedures which generally govern a federal action and the motion to dismiss stage, as well as what the effect of an abeyance would be. *See* Dkt. No. 127 ("Mar. Tr.") 6:8–8:9. On April 22, 2025, Judge Willis granted the motion to hold all non-dispositive motions in abeyance and denied various non-dispositive motions filed by Plaintiff, which fell under the Court's referral for general pre-trial supervision. Dkt. No. 132. For substantially the reasons stated in Judge Willis' April 22 Order, the Court similarly held in

abeyance all non-dispositive motions filed by Plaintiff under the undersigned's jurisdiction and warned that "[a]ny additional motions filed by Plaintiff prior to the resolution of Defendants' pending motion to dismiss will be summarily denied, unless they seek relief that is necessarily time-sensitive and they appear on their fac[e] to be potentially meritorious." Dkt. No. 133.

On August 4, 2025, Judge Willis issued the R&R, recommending that the Court grant the motion to dismiss, dismiss Plaintiff's claims with prejudice, and deny Plaintiff leave to amend since amendment would "[be] unlikely to be productive." R&R at 18. On August 11, 2025, Plaintiff filed objections to the R&R. Dkt. No. 151 ("Obj.").[1] On August 22, 2025, Defendants filed their response to Plaintiff's objections. Dkt. No. 160 ("Resp.").

In the ensuing days, Plaintiff has also filed several "emergency motions," which, among other things, seek leave to supplement the record with factual material that was not part of the Complaint and not before Judge Willis in connection with the motion to dismiss. *See* Dkt. Nos. 153, 155–58. In their opposition, Defendants argue that Plaintiff should not be allowed to supplement the record at this stage. Dkt. No. 154.

## DISCUSSION

### I.    LEGAL STANDARDS

#### A.  Standard of Review

When reviewing a report and recommendation by a magistrate judge, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). When specific objections are lodged, "[t]he district judge must determine *de novo*" those portions of the report and recommendation. Fed. R. Civ. P. 72(b)(3). However, "[w]here the objecting party makes only conclusory or general objections, or

---

[1] Plaintiff's objections were filed twice at Dkt. Nos. 151 & 152.

4

simple reiterates the original arguments, the court will review the report and recommendation strictly for clear error." *Avila v. Acacia Network, Inc.*, Nos. 23-CV-07834 (PAE), 23-CV-10260 (PAE), 2025 WL 2233987, at *2 (S.D.N.Y. Aug. 6, 2025) (citing *Kirk v. Burge*, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) (collecting cases)); *but see Bhagat v. Shah*, No. 24-CV-01424 (VEC), 2025 WL 2396668, at *2 (S.D.N.Y. Aug. 18, 2025) (observing the Second Circuit has recently "expressed skepticism" regarding district courts' clear error review of objections that seek to relitigate issues fully argued in the briefing before the magistrate judge). Similarly, a court will review portions of the report and recommendation to which no timely objections have been made for clear error. *See, e.g.*, *Gershowitz v. Griv*, No. 24-CV-01915 (PAE) (OTW), 2025 WL 2170773, at *2 (S.D.N.Y. July 31, 2025).

When the objecting party is proceeding *pro se*, as is the case here, the court is "obligated to afford a special solicitude" to that party and read the objections "to raise the strongest arguments that they suggest[.]" *Baker v. Coates*, No. 22-CV-07986 (JPO), 2023 WL 6289964, at *1 (S.D.N.Y. Sept. 27, 2023) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) and *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006), respectively). Notwithstanding, a *pro se* litigant is not exempt "from compliance with relevant rules of procedural and substantive law." *Razzoli v. Fed. Bureau of Prisons*, No. 12-CV-03774 (LAP) (KNF), 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

For example, "[c]ourts 'generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation.'" *Avila*, 2025 WL 2233987, at *2 (quoting *Tavares v. City of New York*, No. 08-CV-03782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011)). "[N]ew arguments and factual assertions cannot properly be raised for the first time

5

in objections to the report and recommendation, and indeed may not be deemed objections at all." *Id.* (quoting *Razzoli*, 2014 WL 2440771, at *5).

### B.  Standard on a Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  When resolving a motion to dismiss, the Court must assume all well-pleaded facts to be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558; *see also Iqbal*, 556 U.S. at 679 (holding a complaint is properly dismissed "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct").

### C.  Governing Law

In order to state a claim for copyright infringement, a plaintiff must show (1) ownership of a valid copyright; and (2) copying of the protected elements of the copyrighted work.  *See Webb v. Stallone*, 910 F. Supp. 2d 681, 684 (S.D.N.Y. 2012).  The second prong—requiring a showing of actual copying and improper appropriation—can be proven through direct evidence or indirect evidence, *i.e.*, that the alleged infringer had access to the copyrighted work and that the copyrighted and allegedly infringing works are substantially similar.  *See id.*

"Access may be established directly or inferred from the fact that a work was widely disseminated or that a party had a reasonable possibility of viewing the [copyrighted] work." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001); *see also Webb*, 910 F. Supp. 2d at 686

("To show what is referred to in the case law as 'access,' plaintiff must show either (1) 'a particular chain of events' or a 'link' from his work to the creators of the allegedly infringing work, or (2) that plaintiff's work was 'widely disseminated.'") (quoting *Gal v. Viacom Int'l, Inc.*, 518 F. Supp. 2d 526, 538 (S.D.N.Y. 2007)).

## II.    THE R&R IS ADOPTED IN FULL AND AN ANTI-FILING INJUNCTION IS WARRANTED

### A.    Plaintiff's New Factual Assertions and Requests to Supplement the Factual Record Are Improper

As an initial matter, Plaintiff's attempts to introduce new factual assertions, by way of his objections or otherwise in the various emergency motions he has filed since the R&R was issued, Dkt. Nos. 153, 155, and 157, are improper—new factual assertions are not properly before the Court as objections to the R&R, and the Court will not allow Plaintiff to supplement any other factual material. *See, e.g.*, *Fischer v. Brushy Mountain Bee Farm, Inc.*, No. 17-CV-10094 (PAE), 2023 WL 8603027, at *10 (S.D.N.Y. Dec. 12, 2023) (rejecting newly asserted allegations of substantial similarity in the infringing works, which did not appear in the complaint or the motion to dismiss briefing, and ultimately adopting the report and recommendation and granting the motion to dismiss); *Razzoli*, 2014 WL 24400771, at *7 (declining to substantively treat or analyze a new assertion as a colorable objection where the assertion was not made before the magistrate judge); *Tavares*, 2011 WL 5877548, at *2 (collecting cases). In arguing that the R&R incorrectly found that Defendants did not have access to the Whitehead Aretha Works, Plaintiff asserts that (1) "his 2019 book 'Musicals on the Stars' listing the musical play[] 'My Aretha' ha[d] global sales" across Xlibris, Amazon, Apple, and Google Books, Obj. at 4, 7; (2) in 2004 and 2006, he submitted "Aretha" to Universal Pictures, *id.* at 4; (3) Congressmen John Conyers and John Lewis sent Plaintiff endorsements of "My Aretha" and other plays created and staged by Plaintiff, *id.* at 6–7; and (4) Plaintiff was solicited by Roberta Flack, an American singer, to

write a musical play about her, *id.* at 7. These untimely assertions by Plaintiff are not in the Complaint or otherwise properly before Judge Willis, and therefore they are not properly before the Court as objections to the R&R.

In any event, even taking these assertions as true in favor of Plaintiff and viewing them as if they were part of a proposed amended complaint, they are insufficient to enable Plaintiff's claims to survive Defendants' motion to dismiss or to overcome Judge Willis' conclusion that further amendment would be futile. *See Gal*, 518 F. Supp. 2d at 538 ("Where a work is unpublished, as is the case at bar, it is considered not to have been widely disseminated.").

As to the first assertion, the fact that a separate work of Plaintiff's that listed or mentioned by reference "My Aretha" had any global commercial success does not mean that "My Aretha" or any of the Whitehead Aretha Works themselves were in fact widely disseminated within the meaning of the law and, even if Defendants had reviewed "Musicals on the Stars," they could not have possibly seen the screenplay for "My Aretha" as a result of such review. "[M]ore than literal availability on the public marketplaces is required," since, "in the digital age, content may be 'readily available' in a technical sense while having actually achieved minimal popular success." *Larball Publ'g Co. v. Lipa*, No. 22-CV-01872 (KPF), 2023 WL 5050951, at *11 (S.D.N.Y. Aug. 8, 2023). "Were it otherwise, any work that any person uploaded publicly to the internet would have to be considered sufficiently 'widely disseminated' to give rise to an inference that every person had [seen] it—an inference that would be plainly unreasonable." *Id.* (quoting *Clanton v. UMG Recs. Inc.*, 556 F. Supp. 3d 322, 328 (S.D.N.Y. 2021)). As to the second assertion, as described in detail *infra*, mere corporate receipt of any of the Whitehead Aretha Works is insufficient to establish access, let alone receipt by an entity that is only tied to Defendants by way of corporate ownership. As to the third assertion, the fact that

two endorsements may have come from individuals with particular prominence as Congressmen, but who are not in any way connected to or affiliated with Defendants, does not support a realistic likelihood that Defendants would have seen or reviewed "My Aretha," much less the "Aretha" screenplay. *See id.* at \*12 ("Successful wide dissemination pleadings have . . . offered facts suggesting that the alleged infringer had a realistic likelihood of coming across the allegedly-infringed work."). And finally, whether Plaintiff more generally could be considered as having considerable commercial success—which is not sufficiently alleged in the Complaint or otherwise evident from the materials appended thereto—cannot be imputed to the Whitehead Aretha Works in particular, so as to support a reasonable inference of access.

Accordingly, Plaintiff's new factual assertions in his objections are not proper objections to the R&R and, for the reasons described herein, fail to establish access in any event.[2] Moreover, because the Court finds that Plaintiff should be denied leave to amend, as discussed below, Plaintiff's implicit attempts to do so by seeking to add more factual material before the Court, including by way of a requested "evidentiary hearing," are improper. Similarly, even if viewed as stand-alone motions, Plaintiff's various emergency motions to supplement the factual record must be denied. As an initial matter, it appears that some of the material Plaintiff seeks to "add" was already appended to the Complaint, such as an undated Washington Times newspaper review and a 2002 article from The Washington Afro-American—both of which are specifically referenced in the R&R, *see* R&R at 7—and therefore at least part of Plaintiff's motions must be denied as moot. As to the remainder, the material Plaintiff seeks to add primarily reflects that

---

[2] To determine whether a factual statement was newly asserted in Plaintiff's objections, the Court reviewed the materials relevant to the motion to dismiss. To the extent any factual statement was asserted in any of the other many filings by Plaintiff, such statements are still "newly asserted" for purposes of the Court's review of the R&R on the motion to dismiss.

certain individuals at various points were interested in Plaintiff's work, but ultimately no person ever followed through on his or her interest.  As described *infra*, these failed encounters, whether solicited or not, do not support a finding of access because they do not show that the Whitehead Aretha Works were *successfully* widely disseminated or that they received considerable commercial *success*, as required by the law of copyright infringement.

### B. The R&R Correctly Concludes that Plaintiff Has Not Sufficiently Alleged His Claims

Plaintiff solely but vigorously contests the R&R's findings that he failed to plausibly allege his copyright infringement claim.  For the reasons that follow, the Court agrees with Judge Willis that Plaintiff did not plausibly allege the second element of his copyright infringement claim—copying—because, as thoroughly explained in the R&R, Plaintiff has failed to plausibly allege either access or striking similarity.[3]

#### 1.    Plaintiff Has Not Plausibly Alleged Access

In his objections, Plaintiff primarily takes issue with the fact that the R&R purportedly overlooked certain portions of the Complaint and the materials appended thereto.  The Court disagrees.  The R&R is more than sufficient in its treatment of the various "personal messages or reviews of [Plaintiff's work]," which, as the R&R rightly points out, do not clearly reflect that the Whitehead Aretha Works enjoyed considerable commercial success sufficient to support an inference of access.  *See* R&R at 7–8.

Plaintiff's allegations—both the assertions in the Complaint and materials appended thereto, as well as the new factual assertions described above—even taken as true, simply

---

[3] Although Plaintiff's objections are readily characterized as general, conclusory, or repeating arguments made in the original briefing and rejected by Judge Willis, and thus a clear error standard may apply, *see supra*, given Plaintiff's *pro se* status the Court has applied *de novo* review to the portions of the R&R to which Plaintiff has objected.

reaffirm the same through-line of the many instances of Plaintiff's outreach to various individuals in the film and television industry, whether solicited or not. In sum: to the extent any individual in that industry was interested in any of the Whitehead Aretha Works, he or she chose not to move forward for whatever reason. Therefore, there is no plausible chain of events by which Defendants might have gained access to the Whitehead Aretha Works, and there is no factual basis to conclude that the Whitehead Aretha Works achieved a level of success, whether successful wide dissemination or considerable commercial success, such that it can be reasonably inferred that Defendants had access (as that term is used in the copyright law) to the Whitehead Aretha Works.

For example, in a similar case, *Webb v. Stallone*, the court reasoned that the plaintiff, who was not a professional screenwriter and had no previous screenwriting credits to his name, had not sufficiently proven that the alleged infringer had access to his screenplay. 910 F. Supp. 2d at 686–87. While the plaintiff had submitted his work to several "well-known" screenwriting competitions, which "pride[d] themselves on discovering new material and employ[ed] staff and judges with contacts in the movie industry," the court reasoned that "it would require almost endless speculation to explain how [the plaintiff's] submission of [his work] to amateur screenplay competitions ended up in front of [the alleged infringer]." *Id.* at 686. That same reasoning applies with equal force here—the range of positive attention that the Whitehead Aretha Works achieved, including positive feedback from some individuals in media and the film and television industry, is not tied in any way to Defendants' creation and production of "Genius Aretha."

The fact that "Plaintiff seriously disagrees with the [C]ourt on the issue of access," Obj. at 8, is presumed and is not a cognizable objection for purposes of this Court's review of the

R&R.  The R&R properly analyzed and rejected Plaintiff's attempts to tie his correspondence with Charles Burnett to the creators of "Genius Aretha."  *See* R&R at 8–10.  The mere fact that Charles Burnett, or anyone else that Plaintiff references, *see* Obj. at 7–8, worked on a project that involved Disney in some way does not establish that Disney had access to the Whitehead Aretha Works.  Disney is one of the largest entertainment companies in the world and, in any event, the cited individuals are not formal "agents" of Disney such that their receipt of the Whitehead Aretha Works would establish access within the meaning of copyright law.

Moreover, "[e]ven where there is evidence that [an alleged infringer] *received* a work that a plaintiff alleges was infringed . . . , courts have found that corporate receipt alone is insufficient to establish a chain of events leading to *access*, as that concept is used in copyright law."  *Gal*, 518 F. Supp. 2d at 539 (emphasis in original) (citing *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 48 (2d Cir. 2003)); *see also Dimmie v. Carey*, 88 F. Supp. 2d 142, 146 (S.D.N.Y. 2000) ("[P]laintiff's 'best case' scenario of (alleged) unsolicited mailing does not establish access.  It would be an unfair and legally impermissible stretch to conclude, as Plaintiff does, that by [the plaintiff's] mailing her song to [the corporate defendant], [the individual defendants] had a reasonable opportunity to view or read Plaintiff's work and therefore had access.") (internal references omitted).  In fact, if anything, the materials appended to the Complaint offer proof that Defendants did *not* review the Whitehead Aretha Works, given, for example, Hulu's corporate policy against accepting unsolicited submissions.  *See, e.g.*, *Dimmie*, 88 F. Supp. 2d at 148 (finding the plaintiff had not established access where the defendants followed "a strict policy of refusing to review unsolicited recordings").

Accordingly, Plaintiff's objections to the R&R's finding that Defendants did not have access to the Whitehead Aretha works fail.  Whether reviewed *de novo* or for clear error, the

R&R is both factually and legally correct in its conclusion that Plaintiff failed to sufficiently allege access and the Court fully adopts those portions of the R&R.

### 2.    Plaintiff Has Not Plausibly Alleged Striking Similarity

Plaintiff also contests the R&R's reliance on nine asserted similarities as opposed to Plaintiff's "amended" list of asserted similarities in finding that Plaintiff has not plausibly alleged that Genius Aretha is strikingly similar to the Whitehead Aretha Works so as to overcome his failure to sufficiently allege access. *See* Obj. at 1–2, 8–9.  While it is not entirely clear what "amended" list Plaintiff is referring to, Plaintiff appears to be referring to Dkt. No. 123, which was filed as a "Motion for Attachment to Injunction and Summary Judgment," well after the motion to dismiss had been fully briefed.

The Court finds that the R&R properly declined to rely on the newly-asserted similarities in Dkt. No. 123.  To start, the R&R had already generously construed the assertions in Plaintiff's supplemental opposition papers as similarities and, in considering them, afforded Plaintiff special solicitude in light of his *pro se* status, despite the fact that those filings were procedurally improper.  *See Razzoli*, 2014 WL 2440771, at *5 (recognizing that *pro se* litigants are bound to comply with the relevant rules of procedural and substantive law).  Ignoring the courtesy already afforded him, Plaintiff baselessly asserts that he was entitled to further supplement his opposition to the motion to dismiss through his oral statements at the March 26 conference, which is not permitted, as noted by Judge Willis during the conference, *see* Mar. Tr. 104:19–108:22.  Moreover, Plaintiff falsely represents that he received permission to place his "amended" list of asserted similarities into the record, *see* Obj. at 9—neither the undersigned nor Judge Willis granted such leave.  In fact, Judge Willis made clear that Plaintiff's "motion to attach substantial similarities" was not properly before her.  *See* Mar. Tr. 57:7–58:1 ("I will leave that in [the undersigned's] capable hands."); *see also id.* 22:7–23:22 (clarifying the Complaint must "stand

13

on its own" and Plaintiff was not going to be afforded a "never-ending process" to continually file).

Because Dkt. No. 123 constitutes new factual assertions that were not properly before Judge Willis or otherwise introduced in connection with the motion to dismiss, the Court finds that the R&R properly disregarded them in its determination that Plaintiff failed to sufficiently allege striking similarity between "Genius Aretha" and the Whitehead Aretha Works. Furthermore, upon careful review *de novo*, the Court finds that the R&R is well-reasoned and legally correct and, for the reasons stated therein, adopts the R&R's recommendation that Plaintiff has not met the stringent pleading standard to establish striking similarity.[4]

In conclusion, because Plaintiff has failed to sufficiently allege access or striking similarity, the Court agrees with and adopts the R&R's recommendation to dismiss with prejudice the copyright infringement claim. Because no party has objected to the R&R's recommendation that the remaining claims, including under the Lanham Act and various state law claims, should be dismissed, the Court reviews that portion of the R&R for clear error. Upon review, the Court is similarly satisfied with that portion of the R&R's reasoning and its recommendation that the remaining claims should be dismissed. Accordingly, all other claims are also dismissed with prejudice.

### C. Leave to Amend is Denied and an Anti-Filing Injunction Is Warranted

For all of the reasons discussed *supra*, and in light of the tortured history of this action, Plaintiff will not be afforded leave to amend the Complaint. Plaintiff strenuously contests this in

---

[4] Although for the reasons noted herein the additional "substantial similarity" allegations contained in Dkt. No. 123 are not properly considered on the motion to dismiss, the Court has nonetheless reviewed them in connection with its review of the R&R and objections. Even if those assertions were properly considered, nothing therein changes the Court's conclusion that the R&R should be adopted in its entirety, nor does it change the Court's view, in agreement with Judge Willis, that amendment would be futile.

his objections, just as he has in his many other filings in this action. However, the Court agrees with the R&R that Plaintiff's extreme litigiousness and failure to prevail in nearly 100 lawsuits, the majority of which involve similar claims of copyright infringement, strongly suggest that Plaintiff's abuse of the judicial process will persist and, in any event, any purported amendment would be futile. *See* R&R at 13, 16–18. Nothing in Plaintiff's filings in this case, including the additional filings that post-date the briefing on the motion to dismiss, which the Court has reviewed, indicate that there is any likelihood that Plaintiff will be able to establish, even at the complaint stage, the elements of a copyright infringement claim. Accordingly, the Court agrees with and adopts the recommendation of the R&R that leave to amend should be denied.

The R&R's reasoning in denying Plaintiff leave to amend applies with equal force to the imposition of an anti-filing injunction, as to which the R&R did not specifically indicate a recommendation, but the Court concludes is warranted. "That a district court possesses the authority to enjoin parties from further vexatious litigation is beyond peradventure." *Kaul v. Intercontinental Exch.*, No. 21-CV-06992 (JPO), 2022 WL 4133427, at *7 (S.D.N.Y. Sept. 12, 2022) (internal references omitted) (quoting *Safir v. U.S. Lines, Inc.*, 792 F.2d 19, 23 (2d Cir. 1986)); *see also Miller v. Stallworth*, No. 19-CV-00484 (CSH), 2019 WL 3083071, at *4 (D. Conn. May 21, 2019), *adopted*, 2019 WL 3080913 (D. Conn. July 15, 2019) ("Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions.") (quoting *In re Martin Trigona*, 737 F.2d 1254, 1261 (2d Cir. 1984)). "To determine whether an anti-filing injunction is appropriate, a district court must consider: '(1) the litigant's history of litigation and in particular whether it entailed vexatious, harassing[,] or duplicative lawsuits; (2) the litigant's motive in pursuing the litigation, *e.g.*, does the litigant have an objective good faith expectation of

15

prevailing?; (3) whether the litigant is represented by counsel; (4) whether the litigant has caused needless expense to other parties or has posed an unnecessary burden on the courts and their personnel; and (5) whether other sanctions would be adequate to protect the courts and other parties.'" *Kaul*, 2022 WL 4133427, at *7 (quoting *Eliahu v Jewish Agency for Israel*, 919 F.3d 709, 714 (2d Cir. 2019)).

All five factors weigh in favor of issuing an anti-filing injunction. This case is another chapter in a long saga of repetitive and frivolous lawsuits that Plaintiff has brought against numerous defendants regarding similar claims of copyright infringement of his works. As described in the R&R, Plaintiff has an extensive history of duplicative and meritless lawsuits in which he has gained notoriety as a vexatious and harassing litigant, who completely disregards the procedures governing the federal courts as well as clear and unambiguous court orders. In light of Plaintiff's history of unsuccessful litigation, Plaintiff has no objective expectation of prevailing in this action or any future action based on similar copyright infringement or related claims. And although Plaintiff proceeds *pro se*, he is a sophisticated litigant insofar as he is well-experienced in utilizing and abusing the court system, which has caused needless expense to other parties and unnecessarily burdened court personnel, as evidenced by Plaintiff's continued filing of frivolous motions, despite Defendants' successful motion to hold in abeyance all non-dispositive motions and the Court's subsequent directive to Plaintiff. *See Iwachiw v. N.Y. State Dep't of Motor Vehicles*, 396 F.3d 525, 529 n.1 (2d Cir. 2015) (liberality afforded to *pro se* litigants does not "excuse frivolous or vexatious filings by *pro se* litigants). The course of conduct here suggests that there is no reason to think that Plaintiff's behavior will abate—indeed, Plaintiff has clearly ignored the warning issued by Chief Judge Swain in a similar copyright infringement action filed just a few years ago in this District. *See Whitehead v. Netflix Inc.*, No.

16

22-CV-00883 (LTS), Dkt. No. 14 at 2–3, 9 (S.D.N.Y. July 27, 2022) (collecting cases wherein multiple courts have declared Plaintiff a vexatious litigant and warned or imposed leave-to-file restrictions or other sanctions on him, and warning Plaintiff that he could be ordered to show cause why he should not be barred from filing new actions without prior leave of court).

"Ultimately, the question the court must answer is whether a litigant who has a history of vexatious litigation is likely to continue to abuse the judicial process and harass other parties." *Kaul*, 2022 WL 4133427, at *8 (quoting *Safir*, 792 F.2d at 24). That question is easily answered in the affirmative in this case, and an anti-filing injunction against Plaintiff is appropriate. In crafting an anti-filing injunction, the Court must issue one that is "appropriately narrow." *See id.* (quoting *Bd. of Managers of 2900 Ocean Ave. Condo v. Bronkovic*, 83 F.3d 44, 45 (2d Cir. 1996)). The Court finds that an appropriately narrow injunction against Plaintiff would preclude him from filing lawsuits arising from the allegations here, regarding Defendants' alleged infringement of the Whitehead Aretha Works, in any federal court, as further detailed below. *See id.* ("When a litigant has demonstrated 'a pattern of abusing different district courts around the country, an injunction which applies to all federal district courts is warranted.'") (quoting *Sassower v. Abrams*, 833 F. Supp. 253, 270 (S.D.N.Y. 1993)); *cf. Miller v. Apple, Inc.*, No. 25-CV-01172 (JPC) (RFT), 2025 WL 1554589, at *10–13 (S.D.N.Y. June 2, 2025) (issuing an anti-filing injunction but declining to impose restrictions nationwide where the plaintiff had only brought eight cases against the defendant and/or its agents).

### D. Plaintiff's Other Objections Are Inapposite

The remainder of Plaintiff's objections are points which are substantively immaterial, *e.g.*, arguing that 2017 is not "decades ago," *see* Obj. at 5, or otherwise non-responsive to the R&R, including his accusations that Judge Willis is biased or "abused [her] discretion." *See id.* at 2. For example, Plaintiff references Judge Willis' other rulings in this action, including her

denial of his request to stay the proceedings pending his efforts to retain counsel, and argues that she "changed [her] view" on the basis to deny his leave to amend, initially relying on his procedural failure to timely amend due to certain deaths in his family, and then relying on his likely substantive failure to cure the deficiencies in the Complaint. *See id.* at 2, 10. Notwithstanding the fact that the undersigned does not sit as an appellate court to review every decision or action by Judge Willis, these points in Plaintiff's objections were properly disposed of in Judge Willis' order denying Plaintiff's motion for her to recuse. *See* Dkt. No. 159. Moreover, Judge Willis did not "change her view" with respect to Plaintiff's request for leave to amend. Rather, Plaintiff was twice denied leave to amend on separate occasions: First, after he failed to timely do so as directed by the undersigned, *see* Dkt. No. 52; and second, in the R&R, which the Court adopts as discussed above.

## III.    PLAINTIFF'S REMAINING MOTIONS ARE DENIED AS MOOT OR FAIL ON THEIR MERITS

Turning to each of the remaining motions filed by Plaintiff, all of which are denied as either moot or failing on their merits:

- Dkt. Nos. 93 & 94—In these duplicative motions, Plaintiff seeks to "supplement his Aretha film clip" by sending a copy to the Court and Defendants. These motions shall be denied as moot because they seek to introduce new factual assertions that were not properly before the Court and/or seek to constructively amend the Complaint. And, as noted above, even if the additional material were appropriate for consideration, it would not change the outcome.

- Dkt. Nos. 101 & 102—In these motions, Plaintiff moves for reconsideration a second time with respect to the denial of his motion for summary judgment and motion for the undersigned to recuse from this action. *See* Dkt. No. 96. These motions are

denied as procedurally improper because parties are not afforded a second chance to move for reconsideration. *See Guang Ju Lin v. United States*, Nos. S3 09-CR-00746 (SHS), 13-CV-07498 (SHS), 2015 WL 747115, at *2 (S.D.N.Y. Feb. 18, 2015) ("A litigant is entitled to a single motion for reconsideration."); *see also* Local R. Civ. P. 6.3.

- <u>Dkt. No. 103</u>—In this motion, Plaintiff moves for sanctions based on alleged misrepresentations in Defendants' corporate disclosure statement. In addition to the failure on the merits to show Defendants engaged in sanctionable conduct, this motion is denied as moot because Judge Willis granted Defendants' motion to hold Plaintiff's non-dispositive motions in abeyance and the Court has dismissed the Complaint with prejudice and denied Plaintiff leave to amend.

- <u>Dkt. Nos. 123 & 126</u>—As discussed *supra*, Dkt. No. 123 is the "amended" list of similarities which was submitted as a "Motion for Attachment to Injunction and Summary Judgment." For substantially the reasons discussed above and in the Court's denial of Plaintiff's prior motion for summary judgment (Dkt. Nos. 83 & 96), this motion is denied. Accordingly, Dkt. Nos. 123 and 126 are denied as moot.

- <u>Dkt. No. 137</u>—In this motion, Plaintiff moves for leave to amend his pleadings to add various claims and parties. This motion is denied for substantially the reasons discussed *supra* regarding the denial of leave to amend.

## CONCLUSION

For the foregoing reasons, the R&R is ADOPTED IN FULL. The motion to dismiss is GRANTED, and the Complaint is DISMISSED WITH PREJUDICE.

From the date of this Opinion and Order, Plaintiff David Louis Whitehead is barred from filing in any United States district court any action, motion, petition, complaint, or request for relief against The Walt Disney Company; Hulu, LLC; or National Geographic Partners, LLC (collectively, "Defendants") that relates to or arises from allegations that the "Genius Aretha" series infringed Plaintiff's works, without first obtaining leave from this Court. Any motion for leave must include the caption "Request for Permission to File under Filing Injunction" and must be submitted to the *Pro Se* Intake Unit of this Court along with Plaintiff's proposed submission(s).

If Plaintiff violates this Opinion and Order and files **any** materials without first obtaining leave to file, any request will be denied for failure to comply with this Opinion and Order, and Plaintiff may be subject to sanctions, including monetary penalties or contempt. *See, e.g.*, *Kaul*, 2022 WL 4133427, at *9. This anti-filing injunction does not preclude Plaintiff from filing an appeal to the Second Circuit Court of Appeals from this Opinion and Order.

The Clerk of Court is respectfully directed to (i) terminate Dkt. Nos. 31, 93, 94, 101, 102, 103, 123, 126, 137, 153, 155, and 157; (ii) enter final judgment in favor of Defendants dismissing the Complaint with prejudice; (iii) mail a copy of this Opinion and Order to Plaintiff; and (iv) CLOSE this case.

Dated: August 27, 2025
      New York, New York

SO ORDERED.

MARGARET M. GARNETT
United States District Judge

20